UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **SACV 11-1922 JGB (RNBx)** | Date | January 7, 2014 |
|---|---|---|---|

| Title | ***Scott Montoya v. Orange County Sheriff's Department*** |
|---|---|

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    Order re: Defendant's Objections and Rule 50 Motion (IN CHAMBERS)**


During the damages phase of trial, Defendant Orange County Sheriff's Department ("OCSD") objected to several jury instructions and portions of the verdict form. In addition, OCSD orally moved for judgment as a matter of law on damages under Federal Rule of Civil Procedure 50. The Court orally ruled on these objections and motion during trial. The Court now issues this written ruling to clarify its reasoning and the support for its decisions.

### A. Jury Trial on Liquidated Damages

OCSD objected to the jury instructions and verdict form on the ground that liquidated damages should be decided by the Court, not the jury. OCSD's objection is contradicted by USERRA caselaw on this issue.

Directly addressing the issue, the Seventh Circuit in Middleton v. City of Chicago, 578 F.3d 655 (7th Cir. 2009), held that USERRA for the first time "permitted a plaintiff to seek liquidated damages, a form of relief unavailable under the VRRA" – USERRA's predecessor statute. Id. at 659. The Middleton court continued, "[w]ith that new provision, Congress converted what had been an equitable claim into a legal one, which brought along the corresponding right to a jury trial." Id. (citing Maher v. City of Chi., 463 F. Supp. 2d 837, 844 (N.D. Ill. 2006) (holding that liquidated damages under USERRA are punitive and therefore

subject to trial by jury)).  Accordingly, liquidated damages under USERRA are properly tried to a jury and OCSD's objection is OVERRULED.

### B. Jury Trial on Back Pay and Front Pay

OCSD similarly contends that the issue of back pay should be tried by the Court.  OSCD cites Lutz v. Glendale Union High Sch., 403 F.3d 1061, 1067 (9th Cir. 2005), an ADA case, and Slack v. Havens, 522 F.2d 1091, 1094 (9th Cir. 1975), a Title VII case.  What OCSD fails to realize is that both of these cases are governed by the remedies provision applicable to those statutes at 42 U.S.C. § 2000e-5(g)(1).[1]  That section states:

> "If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may . . . order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate."

42 U.S.C. § 2000e-5(g)(1).  Thus, it is clear that back pay is an equitable remedy under these statutes.  See Lutz, 403 F.3d at 1067-68 ("The reference to '*other* equitable relief,' . . . would make sense only if the relief previously described— reinstatement, which may be awarded with or without back pay—is itself equitable.").  As an equitable remedy, back pay must be tried to the court.  Id. at 1068 ("[T]he award of back pay is an integral part of the equitable remedy of reinstatement, and must therefore be tried to the court.") (quotation and citation omitted).  Congress preserved back pay as an equitable remedy under Title VII and the ADA even after its 1991 expansion of the remedies provision to allow recovery of compensatory and punitive damages.  See id. (citing 42 U.S.C. §§ 1981a(a)(2), 1981a(c)(1)).  In fact, the Civil Rights Act of 1991 explicitly excluded back pay from the types of damages for which it authorized a jury trial.  See id. at 1068-69 (citing 42 U.S.C. § 1981a(b)(2) ("Compensatory damages awarded under this section shall not include backpay . . . ."); id. § 1981a(c)(1) (granting a jury trial right where "a complaining party seeks compensatory or punitive damages under this section")).  Thus, the status of back pay as an equitable remedy with no right to a jury trial is strictly tied to the statutory remedies provisions under the ADA and Title VII.  See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002) (noting, in an analysis of 42 U.S.C. § 2000e–5(e) under Title VII that "our most salient source for guidance is the statutory text").

In the context of this USERRA case, no similar remedies provisions exist.  There is no statutory basis for this Court to import the analysis of Slack and Lutz into USERRA, where there is no mention of back pay (or lost wages) being an equitable remedy, nor is there any restriction on a party's right to a jury trial on the issue.  Instead, USERRA's provision for back pay states

---

[1] Both the ADA and Title VII, as well as other acts, including the Rehabilitation Act, incorporate the remedies provisions delineated at 42 U.S.C. § 2000e–5(g) and later amended at 42 U.S.C. § 1981a.  USERRA does not incorporate these provisions or amendments.

that "[t]he court[2] may require the employer to compensate the person for any loss of wages or benefits . . . ." 38 U.S.C. § 4323(d)(1)(B).[3] This "remedies" section is distinct from the "equity powers" provision under the statute, which states that "[t]he court shall use, in any case in which the court determines it is appropriate, its full equity powers, including temporary or permanent injunctions, temporary restraining orders, and contempt orders, to vindicate fully the rights or benefits of persons under this chapter." 38 U.S.C. § 4323(e). The fact that the statute has a separate equity provision at § 4323(e) which does not subsume or refer to the enumerated remedies in § 4323(d) infers that those remedies, including back pay, are not considered equitable in nature. Cf. Lutz, 403 F.3d at 1067-68 (noting that the use of the phrase "other equitable relief" implied that remedies mentioned elsewhere in the statute were equitable). Thus, the text of USERRA provides no basis for concluding that back pay is an equitable remedy under the statute.[4]

Moreover, there is no doubt that USERRA provides a right to a jury trial. See Baldwin v. City of Greensboro, 714 F.3d 828, 834 (4th Cir. 2013); Middleton, 578 F.3d at 659. There is no indication in the statutory language that the jury trial right does not extend to the determination of lost wages or benefits. In fact, numerous USERRA courts have allowed the question of lost wages to be determined by a jury. See, e.g., Staub v. Proctor Hosp., 131 S. Ct. 1186, 1190 (2011) ("A jury found that Staub's 'military status was a motivating factor in [Proctor's] decision to discharge him,' [citation omitted], and awarded $57,640 in damages."); Fryer v. A.S.A.P. Fire & Safety Corp., Inc., 658 F.3d 85, 93 (1st Cir. 2011); Carpenter v. Tyler Indep. Sch. Dist., 429 F. Supp. 2d 848, 851 (E.D. Tex. 2006) aff'd, 226 F. App'x 400 (5th Cir. 2007); Fink v. City of New York, 129 F. Supp. 2d 511, 514 (E.D.N.Y. 2001). Accordingly, the Court finds that Plaintiff is entitled to a jury trial on the issue of back pay.

---

[2] Courts interpreting USERRA have held that use of the language "the Court" does not imply that the trier of fact must be the trial judge. See Maher, 463 F. Supp. 2d at 843; Helton v. Flowers Bakery of Cleveland, LLC, 109-CV-133, 2009 WL 3296646, at *2-3 (E.D. Tenn. Oct. 9, 2009).

[3] At trial, OCSD appeared to argue that there was a substantive difference between "back pay" and "loss of wages or benefits." No such distinction exists. "An award of back pay compensates plaintiffs for lost wages and benefits between the time of the discharge and the trial court judgment." Johnson v. Spencer Press of Maine, Inc., 364 F.3d 368, 379 (1st Cir. 2004) (citing Lindemann & Grossman, Employment Discrimination Law 635–37 (Cane, Jr. et al. eds., 3d ed. 1996)).

[4] In fact, courts have found that under the current statutory language, a USERRA case is an action at law, which requires a right to a jury trial under the Seventh Amendment. See Maher, 463 F. Supp. 2d at 844 ("[T]he Seventh Amendment applies to actions enforcing statutory rights and requires a jury trial upon demand 'if the statute creates legal rights and remedies, enforceable in an action for damages in the ordinary course of law.' [citation omitted] That is precisely what USERRA does . . . ."); Nino v. Haynes Int'l, Inc., 105-CV-0602-JDT-TAB, 2005 WL 4889258, at *4 (S.D. Ind. Aug. 19, 2005) ("Accordingly, USERRA's additional right to liquidated damages transfers the action from one in equity to one at law, requiring the Seventh Amendment right to a jury.").

Front pay, on the other hand, is equitable in nature and shall be determined by the Court. Interpreting the Family Medical Leave Act ("FMLA"), a statute with a similar remedial provision to USERRA, the Ninth Circuit found that front pay is an equitable remedy and its availability and amount must be determined by the court. See Traxler v. Multnomah Cnty., 596 F.3d 1007, 1011 (9th Cir. 2010). The court reasoned that since front pay is not listed as an enumerated damage in the statute, the court's power to award front pay, as an alternative to reinstatement, is "derived solely from the statutory provision permitting the court to award 'such equitable relief as may be appropriate.'" Id. at 1012 (quoting 29 U.S.C. § 2617).

The similarity between the FMLA remedies provisions and the USERRA remedies provisions persuades the Court that Traxler is instructive. The enumerated remedies under the FMLA include that "[a]n employer . . . shall be liable [for] any wages, salary, employment benefits, or other compensation denied or lost to such employee by reason of the violation." 29 U.S.C. § 2617(a)(1)(A). Similarly, the enumerated remedies under USERRA require an "employer to compensate the person for any loss of wages or benefits suffered by reason of such employer's failure to comply with the provisions of this chapter." 38 U.S.C. § 4323(d)(1)(B). Since the language of the FMLA and USERRA remedies sections track nearly identically and the Ninth Circuit found this section of the FMLA does not include front pay, analogously, the Court finds that § 4323(d)(1)(B) of USERRA does not encompass front pay. Thus, the only source of statutory authority for the Court to award front pay under USERRA comes from the equitable relief provision, which states that "[t]he court shall use, in any case in which the court determines it is appropriate, its full equity powers, including temporary or permanent injunctions, temporary restraining orders, and contempt orders, to vindicate fully the rights or benefits of persons under this chapter." 38 U.S.C. § 4323(e). Similarly, the equitable provision of the FMLA states that an employer is liable "for such equitable relief as may be appropriate, including employment, reinstatement, and promotion." 29 U.S.C. § 2617(a)(1)(B). Again, the Ninth Circuit's finding that this FMLA provision must be the source for front pay relief compels the same result under USERRA.

The Ninth Circuit further reasoned that the "characterization of front pay as an equitable remedy is consistent with the general nature of front pay in the context of other employment-related statutes" including Title VII. Traxler, 596 F.3d at 1012. Since a front pay award is the monetary equivalent of the equitable remedy of reinstatement, then it should constitute equitable relief because it is "incidental to or intertwined with injunctive relief." Id. Courts analyzing USERRA have similarly found front pay to be an equitable remedy to be decided by the court, not the jury. See Carpenter v. Tyler Indep. Sch. Dist., 429 F. Supp. 2d 848, 852 (E.D. Tex. 2006) aff'd, 226 F. App'x 400 (5th Cir. 2007) ("Although front pay results in a monetary award, it is a form of equitable rather than legal relief and should be determined by the court rather than the jury."). The statutory language and the purpose of front pay compel a finding that it is equitable and its eligibility and amount must be determined by the Court. See Traxler, 596 F.3d

at 1012 ("As a proxy for reinstatement, front pay is an equitable award within the purview of the court, not the jury.").[5]

In sum, back pay was properly tried by the jury, while front pay shall be tried by the Court.

## C. Eligibility for and Causation of Damages

As the Court previously discussed on its rulings on the motions in limine, Plaintiff's theory of damages is that the hostile work environment created by OCSD caused him to suffer PTSD severe enough to render him unemployable, and OSCD is liable for any wages lost due to his unemployability. ("MiL Order" at 5, Doc. No. 202.)  The Court previously held that this theory of damages would be cognizable under <u>Gotthardt v. Nat'l R.R. Passenger Corp.</u>, 191 F.3d 1148 (9th Cir. 1999), if Plaintiff presented expert evidence from which a jury could reasonable conclude that the hostile work environment is a but-for cause of PTSD severe enough to render him unemployable.  (<u>Id.</u>)  Both before and during trial, OCSD presented argument and evidence contending that Plaintiff's termination was an intervening cause of his lost wages.  (<u>Id.</u> at 6.)  The Court permitted OCSD to present this evidence as an affirmative defense to Plaintiff's claim for lost wages.  (<u>Id.</u>)  The Court put the parties on notice that "a jury must determine which of these competing theories it finds credible."  (<u>Id.</u>)

Pursuant to these rulings, at the conclusion of the damages phase, the Court posed two questions to the jury regarding causation of damages.  The first question asked, "[d]o you find that Scott Montoya has proven by a preponderance of the evidence that he has been unable to work because of the hostile work environment?"  If the jury answered yes, it proceeded to OCSD's affirmative defense and was asked, "[d]o you find that the Orange County Sheriff's Department has proved by a preponderance that it terminated Scott Montoya for reasons other than his military service?"

First, OCSD cites language in <u>Spencer v. Wal–Mart Stores, Inc.</u>, 469 F.3d 311 (3d Cir. 2006), which states that "a successful hostile work environment claim alone, without a successful constructive discharge claim, is insufficient to support a back pay award."  <u>Id.</u> at 317.  The <u>Spencer</u> court held that because the plaintiff waived her claim for constructive discharge, she could not support a claim for back pay.  <u>Id.</u>  Relying on this language and holding, OCSD argues that Plaintiff abandoned his claim for wrongful termination, and therefore, he cannot seek back pay.  However, OCSD skips over crucial language in <u>Spencer</u>, where the court clarifies its holding and states that "if a hostile work environment does not rise to the level where one is forced to abandon the job, loss of pay is not an issue."  <u>Id.</u>  Thus, Plaintiff need not specifically plead a claim for constructive discharge or wrongful termination to recover back pay, he need only plead a claim in which he contends that the hostile work environment caused him to lose his ability to work.  As discussed above, the Ninth Circuit has found that pleading that the "hostile environment at [OCSD] caused [Montoya]'s disability[,]" "making h[im] unable to return to

---

[5] At trial, Plaintiff agreed to have front pay and reinstatement tried to the Court, and thus he waived his right to a jury trial on this issue.

work for [OCSD]" is sufficient to satisfy this standard.[6]  Gotthardt, 191 F.3d at 1156.  Plaintiff's unemployablity/disability claim stands in place of a constructive discharge or wrongful termination claim and permits a back pay award.[7]

Next, OCSD argues that the Court erred in placing the burden on Defendant to prove that Plaintiff's termination was not based on his service.  Pointing to the statutory section defining the cause of action under USERRA, OCSD contends that it is Plaintiff's burden to prove that his termination was motivated by military animus.  See 38 U.S.C. § 4311(c)(1) ("An employer shall be considered to have engaged in actions prohibited . . . if the person's . . . service . . . in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such . . . service[.]").  However, this section applies to OCSD's liability under USERRA, not its obligation to pay damages.  Therefore, this section does not control the proper burden for proving causation of damages.

Instead, the Court relies on the principles outlined in McKennon v. Nashville Banner Pub. Co., 513 U.S. 352 (1995), to hold that at the damages phase, Defendant has the burden of proving by a preponderance of the evidence that actions subsequent to the USERRA violation were the intervening superseding cause of Plaintiff's lost wages.  In McKennon, defendant conceded that it terminated plaintiff because of her age and therefore violated the ADEA.  Id. at 355.  During litigation, defendant discovered that plaintiff committed a workplace violation while she was employed which would have been "supervening grounds for termination."  Id. at 356.  The Court held that this after-acquired evidence does not preclude an employee's discrimination lawsuit, but it does bear on plaintiff's available remedies.  Id. at 357, 362.  Specifically, the Court held that "neither reinstatement nor front pay is an appropriate remedy," but back pay is available "from the date of the unlawful discharge to the date the new information was discovered."  Id. at 562.  The Court concluded that "[w]here an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone . . . ."  Id. at 362-63.

The present case is not far removed from the theory espoused in McKennon.  Here, the jury found that Plaintiff suffered hostile work environment created by OCSD, and therefore

---

[6] It is important to note that in Gotthardt, plaintiff did not plead wrongful termination or constructive discharge, but only a claim for hostile work environment sexual harassment. Gotthardt, 191 F.3d at 1151.  The Ninth Circuit upheld the back and front pay awards based on the district court's factual finding that "Gotthardt's PTSD had rendered her unable to return to Amtrak."  Id. at 1152.  Here, the jury made an identical finding, thus Plaintiff may seek back and front pay.

[7] Thus, the fact that Plaintiff waived his "alternate claim for lost wages, namely that the harassment by Plaintiff's supervisors resulted in his wrongful termination[,]" has no bearing on his entitlement to back pay.  (MiL Order at 6 n. 6.)  Plaintiff simply abandoned a potential alternate theory of liability for damages, but since his unemployablity/disability claim remained, he was entitled to proceed on his back pay claim.

---

CIVIL MINUTES—GENERAL            Initials of Deputy Clerk  vp for MG

OCSD must concede its violation.[8]  However, OCSD claims that after the conclusion of the hostile work environment, that is, after Plaintiff transferred out of the Stanton station, it terminated Plaintiff based on factors unrelated to the hostile work environment.  As stated in McKennon, the subsequent termination does not bear on OCSD's liability for the USERRA violation, but it may affect Plaintiff's available damages.[9]  In order for the termination to limit Plaintiff's damages, OCSD "must first establish" that Plaintiff's non-military-service-based wrongdoing caused OCSD to terminate him.[10]  See id.  In McKennon, the Court assumed for purposes of its review that the misconduct uncovered during litigation was severe enough to warrant dismissal for reasons unrelated to age discrimination.  Id. at 356.  Here, such a determination had to be made by the jury, and the burden to do so was properly placed on OCSD.  See Sellers v. Mineta, 358 F.3d 1058, 1064 (8th Cir. 2004) ("McKennon makes clear that the burden of establishing these facts rests on the employer."); Mardell v. Harleysville Life Ins. Co., 65 F.3d 1072, 1073-74 (3d Cir. 1995) ("In particular, if [defendant] proves that it would have terminated the plaintiff's employment for the reason revealed by the after-acquired evidence, . . . backpay should run from the discharge to the time that the wrongdoing was discovered . . . .").  Since the jury found that OCSD had not proved it terminated Montoya for reasons other than his service, the limitations on back pay imposed in McKennon were not implicated.

_____

[8] It is important to note that in this case, unlike in McKennon, the conceded violation was for creating a hostile work environment, not for termination.  Although relevant to understanding the analogy between the two cases, this distinction does not materially affect the application of McKennon to the instant action.  See supra notes 8, 9.

[9] Since McKennon has no bearing on liability, OCSD's argument that the termination was not at issue during the liability phase of trial is irrelevant to its applicability during the damages phase.  Even if Plaintiff abandoned his wrongful termination claim as a basis for liability, the termination would still be applicable to OCSD's defense that the termination was an intervening superseding cause of Plaintiff's damages.  Thus, OCSD was entitled to (and was given the opportunity to) present evidence regarding the termination at the damages phase.  OCSD declined the opportuntiy to present such evidence.

[10] OCSD argues that the Court granted OCSD summary judgment on Plaintiff's wrongful termination claim; thus, the termination was found to be proper and must limit Plaintiff's remedies to pre-termination back pay.  First, regardless of the parties' understanding of the summary judgment order, it clearly did not declare that the termination was proper, nor did it dismiss a termination claim.  The Court held that "[d]ue to Plaintiff's failure to sufficiently establish any essential element of his USERRA promotion and *personnel investigation claims*, the Court GRANTS Defendant's Motion for Summary Judgment as to these claims.  Specifically, Plaintiff has failed to present a triable issue of fact on his USERRA claims based on OCSD . . . *initiating the 2009 Investigations* which led to his termination." (Doc. No. 160 at 61) (emphasis added).  Thus, the Court dismissed an independent USERRA claim based on OCSD's alleged military discrimination in initiating personnel actions against Montoya, not on the conduct during those investigations, the ultimate termination, or a hostile work environment resulting in Plaintiff's termination.  More importantly, the Court made no decision on the merits of Plaintiff's termination.

The fact that the underlying violation of USERRA was for a hostile work environment, not for wrongful termination, and that OCSD did not acquire evidence of wrongdoing after Plaintiff's termination does not make McKennon inapposite. Courts have cautioned against reading McKennon too narrowly and held that the decision stands for the proposition that "an employer's liability for damages arising from discriminatory conduct ends when the employer has a valid reason for an employment decision." Lapham v. Vanguard Cellular Sys., Inc., 102 F. Supp. 2d 266, 270 (M.D. Pa. 2000). In conformity with this reading of McKennon, the Court asked the jury to determine whether OCSD had a valid reason for terminating Montoya, and the jury answered in the negative. See also Hite v. Biomet, Inc., 53 F. Supp. 2d 1013, 1025 (N.D. Ind. 1999) ("[A] valid discharge subsequent to a discriminatory act cuts off an employer's liability for backpay arising out of discriminatory conduct occurring prior to the discharge.").[11]

Accordingly, the Court finds that Plaintiff's failure to plead a wrongful termination or constructive discharge claim is not fatal to his back pay award. Also, the Court upholds its jury instruction and the question presented on damages pertaining to OCSD's affirmative defense regarding Plaintiff's termination.

**IT IS SO ORDERED.**

---

[11] OCSD's confusion between liability and damages is further underscored in its trial brief for Phase III. ("Brief," Doc. No. 224.) To support its argument that it was Plaintiff's burden to prove wrongful termination, OCSD cites a portion of Hite where the court held that "an affirmative causal link between adverse employment action and protected activity will not be presumed, but 'must be proved in its own right.' [citation omitted] Simply put, Hite has not met this burden." Hite, 53 F. Supp. 2d at 1019. However, this portion of the opinion pertains to Hite's motion for reconsideration on defendant's liability for "discharg[ing] her in retaliation for exercising her FMLA rights." Id. at 1016. Given that this section of Hite relates to liability for retaliatory discharge, it is no wonder that plaintiff has the initial burden of proof. See id. ("In analyzing Hite's claim of discrimination, this court concluded that plaintiff [] failed to demonstrate a causal connection between her termination and her exercise of FMLA rights . . . ."). However, damages are another matter. In the same opinion, Hite addresses defendant's motion for partial summary judgment on damages. See id. at 1023-26. It is this portion of the opinion which is relevant to the Court's analysis here.

Pertaining to damages, the Hite court held that "a valid discharge subsequent to a discriminatory act cuts off an employer's liability for backpay arising out of discriminatory conduct occurring prior to the discharge." Id. at 1025. However, in that case, unlike here, the court determined on summary judgment that Hite's termination was valid. Id. Thus, the Hite court did not have to reach the question of the proper burden of proof on the validity of the termination at the damages phase. Here, for the reasons discussed above, the jury had to make a determination of the validity of the termination at the damages phase in order to limit Plaintiff's recovery. Accordingly, Hite's applicability is limited to the principles espoused regarding damages.

---