UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **SACV 11-1922 JGB (RNBx)** | Date | November 13, 2014 |
| Title | *Scott Montoya v. Orange County Sheriff's Department* | | |

| | |
|---|---|
| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Findings of Fact and Conclusions of Law Re: Court Trial on Equitable Relief (IN CHAMBERS)

    This action was tried to a jury, which returned a verdict for Plaintiff on his claim for a hostile work environment motivated by his military service. In the second phase of trial, the jury awarded Plaintiff $496,006 in damages for lost vacation pay, lost back wages, and liquidated damages. Plaintiff's entitlement to equitable relief, namely reinstatement and/or front pay, was tried to the court on January 9, 2014. Having considered the evidence, the arguments of counsel, and the record in this action, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

### I. BACKGROUND

    In this action, Plaintiff Scott Montoya stated a single claim against the Orange County Sheriff's Department ("OCSD") under the Uniform Servicemembers Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. § 4311, for subjecting him to a hostile work environment motivated by his service in the military. After ruling on cross-motions for summary judgment, the Court held a three-phase trial in this matter. The first phase on liability commenced on October 29, 2013. (Doc. No. 207.) After seven days of evidence and argument, the jury reached a verdict on day eight. (Doc. No. 219.)

The jury found in favor of Plaintiff. (Doc. No. 232.) First, the jury concluded at least one OCSD supervisor was motivated by Plaintiff's military service and caused him to experience a hostile work environment which resulted in a tangible employment action. (Id. at 2-3.) Next, the jury found Plaintiff was subjected to a hostile work environment by coworker(s) who were motivated by his service in the uniformed service. (Id. at 5.) The verdict further found OCSD was liable for the coworker harassment because it knew or should have known about it and failed to take prompt, effective remedial action reasonably calculated to end it. (Id.) The jury did not find that a preponderance of the evidence supported OCSD's affirmative defense, answering in the negative when asked whether Plaintiff's hostile work environment was caused by something other than his protected status as a military servicemember. (Id. at 6.)

On November 14, 2013, the jury reconvened for the second phase of trial concerning damages, specifically lost vacation pay, lost back wages, and liquidated damages. (Doc. No. 226.) The jury found that the hostile work environment caused Plaintiff to lose vacation pay in the amount of $41,825.00. (Doc. No. 231.) As to lost wages, the jury answered "yes" to the question: "Do you find that Scott Montoya has proved by a preponderance of the evidence that he has been unable to work because of the hostile work environment?" (Id. at 3.) The jury further found that OCSD failed to prove its affirmative defense that it terminated Plaintiff for reasons other than his military service. (Id.) It awarded Plaintiff $206,178.00 in lost wages. (Id. at 4.) Concluding OSCD's conduct was willful, the jury doubled the awarded wages and benefits, resulting in an additional $248,003.00 in liquidated damages. (Id. at 5.)

The Court heard the final issues regarding equitable relief on January 9, 2014. (Doc. No. 250; Reporter's Transcript of Proceedings, Jan. 9, 2014 ("Jan. 9 RT").) OCSD submitted a trial brief regarding Phase III on January 2, 2014. ("Def. Brief," Doc. No. 244.) The parties also filed proposed findings of fact and conclusions of law. ("Pl. Prop.," Doc. No. 248; "Def. Prop.," Doc. No. 247.)

## II. FINDINGS OF FACT

Plaintiff joined OCSD in 1989 as Sheriff's Special Officer. In 1995, he enlisted in the United States Marine Corps reserve and was called to active duty in 2002. After serving as a Scout Sniper in Iraq from 2002 to 2003, Plaintiff resumed his position with OCSD. Plaintiff began patrol training at the OCSD station in Stanton, California and became a Deputy Sheriff II on February 6, 2005. After returning to OSCD, Plaintiff was awarded the Navy Cross by the Secretary of the Navy for his service in Iraq.

While he was stationed at Stanton, Plaintiff experienced numerous incidents of conflict with his coworkers. Beginning with his training to become a patrol deputy, Plaintiff put forth evidence to show his coworkers, specifically his original Field Training Officer Tim Keller and a fellow Deputy Tim Cullen, taunted, teased, and played pranks on Plaintiff. Many of these incidents involved Plaintiff's military service and the Navy Cross. Plaintiff reported several of these incidents to his superiors via written memoranda introduced into evidence.

During the course of Plaintiff's employment, OCSD initiated seven personnel investigations into Plaintiff's conduct. Several of these investigations concerned inappropriate physical contact or comments to female coworkers, inmates, or citizens. One investigation in 2006 concerned Plaintiff's personal association with a wanted felony suspect for which he received a 240-hour suspension.

In late 2008, Plaintiff was assigned the position of Gang Reduction and Intervention Program ("GRIP") officer – a position which required Plaintiff to perform additional duties in order to address student truancy in elementary schools. In February 2009, OCSD relieved Plaintiff of his GRIP responsibilities.

In May 2009, OCSD transferred Plaintiff from Stanton to South Operations. After the transfer, OCSD initialed the final three personnel investigations into (1) Plaintiff's dishonesty about his whereabouts and avoidance of his patrol duties, (2) an inappropriate, explicit comment Plaintiff allegedly made to juveniles, and (3) purportedly inappropriately handling of a domestic violence incident. These three investigations were sustained and cited as a basis for OCSD's eventual termination of Plaintiff.

On December 7, 2009, Internal Affairs Investigator Lavinia Vega made a 15-slide PowerPoint presentation to OCSD's executive staff regarding Plaintiff's history, personnel file, and "Threat Assessment." The Threat Assessment evaluated whether Plaintiff posed a threat to personnel in the department. It outlined his military training, combat experience, Navy Cross, sniper and karate skills, and the details of his registered assault rifle. The slides further described Plaintiff as volatile, unstable, and threatening.

The next day, OCSD placed Plaintiff on administrative leave, installed a camera outside his residence, collected his vehicle registration data, and placed a GPS tracker on his car. OCSD issued a memorandum to supervisors forbidding Plaintiff from entering OCSD facilities. The administrative leave, final three personnel investigations, and surveillance continued until October 8, 2010, when OCSD officially terminated Plaintiff citing numerous violations of OCSD Department rules and regulations.

With regard to liability, the jury found Plaintiff suffered a hostile work environment while employed by OCSD on account of his protected status as a military servicemember. In determining causation of damages, the jury further found that (1) OCSD did not establish that it terminated Plaintiff for reasons other than his military service and (2) until the time of trial, Plaintiff had been unable to work due to the injuries suffered as a result of the hostile work environment. At the bench trial on equitable relief, OCSD challenged both of these jury findings. (See Def. Brief at 4-5; Def. Prop. at 4-5.) Because these facts are relevant to the Court's determination of Plaintiff's eligibility for reinstatement or front pay, the Court makes an independent determination of the material facts. See Traxler v. Multnomah Cnty., 596 F.3d 1007, 1011 (9th Cir. 2010).[1]

---

[1] The Court may consider the jury's verdict as advisory. See Fed. R. Civ. P. 39(c); Traxler, 596 F.3d at 1013.

First, OCSD argues that the evidence establishes that Plaintiff was terminated for reasons other than his military service and thus the termination acts as a superseding cause, cutting off Plaintiff's eligibility for front pay. (Def. Brief at 5-6.) OCSD points to the testimony of Investigator Vega who stated that Plaintiff could have been terminated as a result of the findings of any of the three 2009 personnel investigations and of Assistant Sheriff Mike James who signed Plaintiff's termination and stated that Plaintiff's military service had no effect on his decision to terminate. (Def. Prop. at 3.) The Court finds that ample evidence supports the jury's damages verdict and similarly concludes that OCSD did not establish that it had a valid, non-service related basis for terminating Plaintiff. There is substantial evidence that the executive staff, including Assistant Sheriffs Mike James, Tim Board and Investigator Vega, participated in Plaintiff's Threat Assessment and in the decision to place Plaintiff on administrative leave and under daily surveillance leading up to his termination. There is uncontroverted evidence that OCSD undertook the Threat Assessment, administrative leave, and surveillance in part due to fears that Plaintiff would react violently to his termination because he suffered from service-related post-traumatic stress disorder ("PTSD") and he could be a threat to personnel due to his military training. Due to the connection between Plaintiff's military service, the Threat Assessment, and resulting termination, the Court finds that OCSD did not establish that it terminated Plaintiff for reasons other than his military service.[2]

Second, OCSD challenges the jury's factual finding that the hostile work environment at OCSD caused Plaintiff's unemployability. (Def. Prop. at 4-5.) OCSD points to two exhibits, numbered 558 and 559, entered into evidence during the jury and Court trials. On April 22, 2011 and September 30, 2011, the Department of Veterans Affairs ("VA") issued "Rating Decisions" in response to Plaintiff's disability claim filed on September 9, 2010. The initial decision determined Plaintiff was entitled to "individual unemployability" effective September 9, 2010 due to "service-connected PTSD, panic disorder" with an evaluation of 70 percent and service-connected tinnitus evaluated at 10 percent. (Exh. 558 at 1-2.) The VA found that Plaintiff was unemployable because he was "unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities." (Id. at 5.) The decision concluded that, "In the instant case[,] service-connected post-traumatic stress disorder, panic disorder is the sole cause of unemployability." (Id.) On September 30, 2011, the VA issued a supplemental Rating Decision evaluating additional injuries and concluding that Plaintiff also suffered from service-connected traumatic brain injury at 70 percent and post-traumatic headaches at 50 percent, both effective on the initial claim date of September 9, 2010. (Exh. 559 at 1.)

OCSD argues that the Rating Decisions are conclusive proof that Plaintiff's injuries resulted from his military service, not from the hostile work environment at OCSD. (Def. Prop. at 4-5.) OCSD hinges this argument on the term "service-connected." However, the April 11, 2011 Rating Decision makes clear that Plaintiff's service-connected PTSD was "aggravated by professional civilian trauma as a deputy sheriff[.]" (Exh. 558 at 3.) Thus, the Rating Decision

---

[2] As discussed in the Court's January 7, 2014 Order, OCSD has the burden to prove the fact that it terminated Plaintiff for reasons other than his military service by a preponderance of the evidence. (Doc. No. 249 at 6-8.)

and determination of unemployability incorporated military-related stress as well as harassment Plaintiff suffered at OCSD. Accordingly, the Court finds that the Rating Decisions do not compel the conclusion that Plaintiff's military service is the sole cause of PTSD severe enough to render him unemployable.[3]

To the contrary, the Court finds the testimony of Plaintiff's expert Dr. Douglas Christian Johnson, a clinical neuropsychologist who studies and evaluates veterans with PTSD, persuasive. After reviewing Plaintiff's medical history, treatment record, and conducting two in-person interviews and clinical assessments, Dr. Johnson evaluated Plaintiff for PTSD and then offered an opinion on the potential causes of his current symptom levels. Dr. Johnson opined that Plaintiff suffers from PTSD and "the source of Scott Montoya's PTSD symptoms at best . . . were exacerbated by his experience with Orange County Sheriff's Department. At worse, they were caused." (Reporter's Transcript of Proceedings, Nov. 14, 2014 ("Nov. 14 RT") at 123:4-8.) "His symptoms are probably peaking around 2008, 2009 . . . [and continuing] through the course of the trial." (Id. at 123:20-22.) Dr. Johnson's opinion in combination with Plaintiff's testimony and the medical records and treatment notes provide substantial evidence from which the Court finds that the hostile work environment at OCSD exacerbated Plaintiff's PTSD symptoms rendering him unable to work through the time of trial.

At the time of trial, Plaintiff was 43 years old. Plaintiff's damages expert, Brian Brinig, presented evidence of lost earnings and benefits to the jury during Phase II and to the Court during Phase III. Although Mr. Brinig testified as to his calculations, Plaintiff did not enter into evidence any of Mr. Brinig's financial schedules or a breakdown of his calculations. The only damages evidence presented was Mr. Brinig's cursory testimony.

According to Mr. Brinig, Plaintiff earned an hourly wage of $42.16, plus P.O.S.T. pay of $2.10 per hour prior to his termination from OCSD. Plaintiff worked on average 2,228 hours per year in the five years preceding his termination. On the date of his separation from OCSD, Plaintiff's annual salary was $98,629.

Using the Bureau of Labor Statistics approximation, Mr. Brinig estimated that Plaintiff expected to work until age 63.3. Anticipating a projected long-term inflation rate of 2.4 percent, Mr. Brinig calculated that Plaintiff's future earnings and benefits from the date of trial onward

---

[3] In its Brief, OCSD argues that the traumatic brain injury and post-traumatic headaches discussed in the September 11, 2011 Rating Decision were not caused by the hostile work environment. (Def. Brief at 4.) Even if true, this evidence is immaterial. Exhibit 558 makes clear that PTSD is the "sole cause" of Plaintiff's unemployability. (Exh. 558 at 5.) There is no evidence that the September 11, 2011 Rating Decision modified this conclusion. Thus, Plaintiff need only demonstrate that the hostile work environment is a but-for cause of PTSD severe enough to render him unemployable. Plaintiff did not claim that the hostile work environment affected any of his other service-connected disabilities, including traumatic brain injury, tinnitus, or post-traumatic headaches. Because Plaintiff does not claim these injuries in this action, he need not present "evidence that the harassment found by the jury . . . had any affect whatsoever on Scott Montoya's traumatic brain injury and/or post-traumatic headaches." (Def. Brief at 4.)

would total $1,894,973, reduced to present value. Assuming that Plaintiff would continue working at OCSD through age 63.3 with a growth in salary and years of service, Mr. Brinig projected $1,213,855 in Plaintiff's lost retirement income based on a life expectancy of 78 and a growth rate of 3 percent, discounted to present value. The total lost future income, benefits, and retirement is $3,108,828. From this total, Mr. Brinig subtracted the retirement benefits Plaintiff may currently receive, equaling $1,144,824 or $2,548 per month until age 78, reduced to present value. Mr. Brinig thus concludes that the present value of Plaintiff's future loss of earnings and retirement, net the offset of retirement he will receive, is $1,964,000. Plaintiff seeks this amount as a front pay award from the Court.

OCSD did not provide any contrary front pay calculations, nor did it offer its own damages expert.[4]

### III. CONCLUSIONS OF LAW

In the third phase of trial, Plaintiff seeks equitable relief in the form of front pay, in lieu of reinstatement. In a prior order, the Court addressed several questions of law related to the issue of front pay. (See "Jan. 7 Order," Doc. No. 249.) The Court incorporates herein all the conclusions of law from its January 7, 2014 order relevant to the issues presented at the bench trial and discussed in the parties' relevant filings. (Id.) The Court addresses all remaining questions of law below.

#### A. Pleading Equitable Relief

As the Court previously discussed in great detail in the January 7, 2014 Order, under USERRA, front pay is a form of equitable relief determined by the Court. (Jan. 7 Order at 4.) OCSD argues that Plaintiff failed to properly request equitable relief in the operative pleading or pretrial memorandum of contentions of fact and law and therefore is ineligible for a front pay award. (Def. Brief at 2-3.) To the contrary, Federal Rule of Civil Procedure 54(c) provides that a "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings." Fed. R. Civ. P. 54(c). The Court acknowledges that the First Amended Complaint does not list equitable relief, reinstatement, or front pay among the relief sought. ("FAC," Doc. No. 8.) However, during the course of discovery, Plaintiff disclosed that he sought equitable relief in the form of front pay by designating Mr. Brinig as an expert on future lost wages, producing financial schedules outlining his front pay calculations, and arranging to have him deposed by OCSD. Thus, OCSD had notice of the equitable remedy sought by Plaintiff. Moreover, OCSD has not identified any prejudicial effect from Plaintiff's failure to list its request for equitable relief in his pleading. The Court finds that Plaintiff's failure to demand equitable relief in the FAC does not preclude him from seeking this relief at trial. See Arley v. United Pac. Ins. Co., 379 F.2d 183 (9th Cir. 1967) (citing Rule 54(c) in affirming award of declaratory relief despite plaintiff's failure to include that relief in complaint); Mueller v. Auker, No. CIV 04-399-S-BLW, 2010 WL 2265867, at *5 (D. Idaho June 4, 2010)

---

[4] Any conclusions of law that are deemed to be findings of fact are incorporated herein as such.

(allowing plaintiffs to seek injunctive and declaratory relief at trial, despite having never demanded such relief in the pleadings).

### B. Reinstatement

Under 38 U.S.C. § 4323(e) of USERRA, the Court can use its "full equity powers" "to vindicate fully the rights or benefits of persons under this chapter." In terms of equitable relief, courts have regularly awarded reinstatement and/or front pay to successful plaintiffs in USERRA actions. See Serricchio v. Wachovia Sec. LLC, 658 F.3d 169, 193-94 (2d Cir. 2011); Carpenter v. Tyler Indep. Sch. Dist., 429 F. Supp. 2d 848, 852 (E.D. Tex. 2006) aff'd, 226 F. App'x 400 (5th Cir. 2007).[5]

Front pay is "money awarded for lost compensation during the period between judgment and reinstatement or in lieu of reinstatement." Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 846 (2001). "In cases in which reinstatement is not viable because of continuing hostility between the plaintiff and the employer or its workers . . . courts have ordered front pay as a substitute for reinstatement." Id. In other words, front pay is as a monetary substitute for the equitable remedy of reinstatement. Traxler, 596 F.3d at 1011.

"[R]einstatement, when it is feasible, is 'the preferred remedy' in a discrimination suit." Gotthardt v. National R.R. Passenger Corp., 191 F.3d 1148, 1156 (9th Cir. 1999) (quoting Cassino v. Reichhold Chems., Inc., 817 F.2d 1338, 1346 (9th Cir. 1987)). Nonetheless, "[a]wards of front pay are appropriate when it is impossible to reinstate the plaintiff or when it would be inappropriate due to excessive hostility or antagonism between the parties." Thorne v. City of El Segundo, 802 F.2d 1131, 1136 (9th Cir. 1986); see also Traxler, 596 F.3d at 1012 ("As a practical matter, front pay is awarded at the court's discretion only if the court determines that reinstatement is inappropriate, such as where no position is available or the employer-employee relationship has been so damaged by animosity that reinstatement is impracticable.").

The Court finds that due to the excessive hostility between the parties, reinstatement is infeasible. During the trial, it was apparent that Plaintiff has no desire to return to OCSD due to the harassment he experienced as a Deputy Sheriff. Moreover, OCSD has made no offer to reinstate Plaintiff; instead, it argues its termination of Plaintiff was valid and his disciplinary record warrants discharge, even in the absence of the harassment. Based on the parties' animosity and unwillingness to reengage, the Court finds reinstatement is not a realistic possibility.

Alternatively, reinstatement is inappropriate because the VA declared Plaintiff unemployable and thus he is "unable to maintain substantially gainful employment." (Exh. 572.) See also 38 C.F.R. § 4.16. Thus, reinstatement is not feasible because Plaintiff has introduced undisputed evidence that as of the time of trial, he is unable to work.

---

[5] There is little authority on reinstatement and front pay awards under USERRA. Other federal employment discrimination statutes, however, contain similar provisions which permit the requested relief and the corresponding caselaw is therefore helpful on the issue.

Since reinstatement is unavailable, the Court turns to front pay.

### C. Front Pay

OCSD argues that Plaintiff is not entitled to front pay because his termination and the VA's Rating Decisions finding him unemployable are superseding causes of his lost future earnings. For the reasons discussed in the Court's findings of fact, there is sufficient evidence to support the conclusion that OCSD's hostile work environment was a but-for cause of PTSD severe enough to render Plaintiff unemployable at the time of trial. Under the principles outlined in Gotthardt v. National Railroad Passenger Corporation, 191 F.3d 1148 (9th Cir. 1999), this factual finding is sufficient to permit an award of front pay. See id. at 1155-56 (affirming an award of front pay where the "district court found the required causal connection between the hostile work environment and Gotthardt's debilitating medical condition when it stated that "defendant . . . forced [Gotthardt] to go on medical leave with PTSD."). (See also Doc. No. 202 at 5; Jan. 7 Order at 5-6.)[6]

Plaintiff further relies on Gotthardt to request an award of front pay through his projected retirement age of 63.3 – an award of approximately 20 years of future wages and benefits. Front pay is intended to be a temporary award. Cassino, 817 F.2d at 1347. Additionally, because there is a potential for windfall, front pay awards must be tempered. Gotthardt, 191 F.3d at 1157.

In Gotthardt, the Ninth Circuit found that a district court did not abuse its discretion in awarding 11 years of front pay to a 59 year old employee who was close to retirement and unable to enter the workforce as a result of the defendant's conduct. Gotthardt, 191 F.3d at 1157. The facts here are not nearly as severe. Plaintiff is only 43 years old and a front pay award extending until retirement would be nearly double the length approved in Gotthardt. More importantly, Plaintiff has failed to adduce any evidence demonstrating that he will remain unemployable for the next twenty years. In Gotthardt, unlike here, the Ninth Circuit found that there was sufficient evidence in the record from which the district court could conclude that plaintiff's PTSD would render her "unable to return to work for Amtrak" and "prevent[] her from obtaining employment in another field of work" in the future. Id. at 1156. Here, there is no evidence in the record from which the Court can conclude that Plaintiff's PTSD, as exacerbated by the harassment at OCSD, will render him unemployable for the indefinite future. In fact, Plaintiff's expert, Dr. Johnson, testified that Plaintiff's PTSD symptoms "peaked" in 2008-2009 and extended only through the course of trial. (Nov. 14 RT at 123:20-22, 147:14-19.) Dr. Johnson did not testify that the harassment Plaintiff suffered at OCSD would continue to exacerbate his PTSD causing him to be

---

[6] Initially, OCSD also argued that Plaintiff failed to mitigate any front pay damage award. (See Def. Prop. at 7.) However, at trial, OCSD abandoned this defense by failing to present any evidence of Plaintiff's failure to mitigate. See Odima v. Westin Tucson Hotel, 53 F.3d 1484, 1497 (9th Cir. 1995) (holding that defendant bears the burden of establishing plaintiff's failure to mitigate by proving that "during the time in question there were substantially equivalent jobs available, which [the plaintiff] could have obtained, *and* that [the plaintiff] failed to use reasonable diligence in seeking one.") (quotation omitted) (alteration and emphasis in original).

indefinitely unemployable. Moreover, Plaintiff introduced no evidence to demonstrate that his PTSD was incurable or would remain severe enough to make him unable to work at any point in the future. Conversely, the evidence indicates that Plaintiff has regularly sought treatment for his PTSD both from the VA and private physicians and that the severity Plaintiff's symptoms fluctuate given the stressors to which he is exposed.

Dr. Johnson testified that PSTD symptoms manifest when a veteran diagnosed with the disorder is exposed to stressors, such as a hostile work environment. (Nov. 14 RT at 112:3-8.) Logically, when a PTSD patient is no longer exposed to a harassing workplace, that stressor is eliminated and thus will have a reduced effect on his PTSD symptoms. Specifically as to Plaintiff, Dr. Johnson offered his expert opinion that at the time of his pretrial evaluations "Plaintiff's symptoms [were] pretty dominantly about feeling in danger [at work], feeling unsupported [by his fellow deputies,] and the stress of being ostracized and not part of the team." (Id. at 120:2-20.) Plaintiff has not been in the OCSD work environment since he was placed on administrative leave in December 2009 and then terminated in October 2010. Accordingly, since at least 2010, Plaintiff has not experienced the workplace stressor Dr. Johnson testified was the source of Plaintiff's PTSD symptoms. Without any evidence to the contrary, the only reasonable conclusion the Court can draw from the evidence presented is that Plaintiff's PTSD symptoms related to the hostile work environment at OSCD have and will continue to recede over time.

The Court finds that an award of 20 years of front pay is excessive an unwarranted. Courts in this district have uniformly refused to award front pay for such extensive periods of time. See Malone v. Potter, No. CV 07-05530 MMM FFMX, 2010 WL 330252, at *13 (C.D. Cal. Jan. 15, 2010) ("The court has not identified a single case in which front pay was awarded for so long a period[,]" namely 25 years.); see also Jung v. Potter, No. CV04-429-PHX-MHM, 2008 WL 2620905, at *3 (D. Ariz. July 1, 2008) ("Numerous other courts have acknowledged that it is rare that a person in his 40's would be awarded front pay until retirement age.").

Instead, the Court concludes it is appropriate to award one year of front pay from November 2013 to November 2014. By November 2014, Plaintiff will have been separated from and unaffected by the hostile work environment at OCSD for nearly five years. Based on the severity of the harassing conduct Plaintiff experienced at OCSD, which primarily consisted of teasing, pranks, ostracization, and marginalization, the Court finds that within five years after its cessation, the harassment will no longer be an appreciable stressor on Plaintiff's PTSD and his former workplace stressors will no longer be severe enough to render him unemployable.[7]

---

[7] The Court notes that this finding does not mean that Plaintiff will become employable or that his PTSD will symptoms will diminish. As stated by Dr. Johnson, other stressors beside the hostile work environment may arise which aggravate Plaintiff's PTSD rendering him continuously unemployable. However, OCSD is not liable for stressors other than those caused by the hostile work environment. Thus, the Court determines the length of Plaintiff's front pay award based on the evidence of the reasonable effects the hostile work environment had and continues to have on Plaintiff's PTSD. The Court finds that the evidence supports that the lingering effects of the harassment are only substantial enough to render him continuously unemployable for one year beyond trial.

Between the jury's award of backpay and this Court's front pay award, Plaintiff will receive approximately four years of post-termination compensation to remedy the hostile work environment.  The Court finds that this amount adequately compensates Plaintiff for the injuries he suffered at OCSD from 2004 to 2009.

"The plaintiff bears the initial burden of providing the district court 'with the essential data necessary to calculate a reasonably certain front pay award, including the amount of the proposed award, the length of time the plaintiff expects to work for the defendant, and the applicable discount rate.'"  Glenn-Davis v. City of Oakland, No. C 02-2257 SI, 2008 WL 410239, at *3 (N.D. Cal. Feb. 12, 2008) (quoting Barbour v. Merrill, 48 F.3d 1270, 1279 (D.C. Cir. 1995) (internal citation and quotations omitted); see also Jung, 2008 WL 2620905 at *2.  As discussed above, Plaintiff failed to present the Court with any schedules or breakdowns of the total lost future income, benefits, or retirement calculated by Mr. Brinig.  Accordingly, the Court is unable to determine the amount of retirement benefits to which Plaintiff would be entitled given a one-year front pay award.  Because Plaintiff has not met his burden of provide the Court with essential data necessary to calculate his lost retirement income through age 44 rather than age 63, the Court cannot award lost retirement, as any such award would be entirely speculative.

However, Mr. Brinig provided the Court with sufficient data from which it can make a non-speculative estimate of the wages and benefits Plaintiff would have received as a Deputy Sheriff II at OCSD from 2013 to 2014.  Based on his annual salary and benefits at the time of his termination, the Court awards Plaintiff one-year of front pay totaling $98,629.[8]

### IV. CONCLUSION

For the reasons stated, the Court concludes Plaintiff is entitled to $98,629 in front pay. The Court ORDERS Plaintiff to file a proposed judgment in conformity with the jury's verdicts and this Order by November 21, 2014.

**IT IS SO ORDERED.**

---

[8] Any findings of fact that are deemed to be conclusions of law are incorporated herein as such.